UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHARLES EDWARD GENSEMER,

Defendant.

Case No. 2:07-cr-0145-KJD-PAL
Related Case: 2:17-cv-3144-KJD

**ORDER**

Before the Court is Charles Edward Gensemer's amended motion to vacate his sentence under 28 U.S.C. § 2255 (ECF No. 1589). The Court ordered the government to respond, which it did on December 11, 2019 (ECF No. 1593), and Gensemer replied shortly thereafter (ECF No. 1594). Gensemer also moved for appointment of counsel (ECF No. 1592). As an initial matter, Gensemer's § 2255 petition does not turn on complex or novel arguments. Therefore, appointment of counsel is unwarranted, and the Court denies his motion for appointment of counsel (ECF No. 1592).

Gensemer moves to vacate his sentence on four grounds. First, he claims that his conviction for RICO conspiracy and drug conspiracy violate his Fifth Amendment right against double jeopardy. Second, Gensemer argues he received ineffective assistance of counsel because his trial counsel failed to communicate a global plea offer during the plea-negotiation stage. Third, Gensemer claims ineffective assistance of counsel based on trial counsel's failure to call Gensemer's girlfriend to testify that Gensemer did not own the firearms police found in their home. Fourth, Gensemer argues his trial counsel was ineffective because he did not adequately challenge Gensemer's firearm charge under 18 U.S.C. § 924(C). The Court has reviewed Gensemer's claims and determines that it can resolve the petition without holding an evidentiary hearing. Each of Gensemer's claims are procedurally barred or not otherwise plausible with this

record. Therefore, Gensemer's petition is denied.

I. **Background**

On July 10, 2007, Gensemer and thirteen other alleged Aryan Warriors were indicted for conspiracy to engage in a Racketeer Influenced Corrupt Organization (RICO). The indictment included conspiracy charges, drug offenses, and several violent assaults. See Indictment, ECF No. 1. The government later superseded the indictment to add additional drug and firearm-possession charges. Superseded Indictment, ECF No. 181. Gensemer elected to go to trial, and on July 6, 2009, a jury found him guilty on count one (RICO conspiracy), count ten (drug conspiracy), and count fourteen (possession of a firearm during a drug trafficking offense). Judgment 1, ECF No. 1211. In December of 2009, Gensemer was sentenced to 240 months on count one, 360 months on count ten, and 60 months on count fourteen. Gensemer's 240-month and 360-month sentences run concurrently, while his 60-month sentence runs consecutively. His total term of incarceration is 420 months. Id.

Gensemer timely appealed, and the Ninth Circuit affirmed his conviction. See Order Affirming Conviction, ECF No. 486; United States v. Wallis, No. 09-10502, 630 Fed. Appx. 664 (9th Cir. Nov. 6, 2015). Gensemer did not petition the Supreme Court for certiorari, which finalized his direct appeal. Gensemer then began preparing a collateral attack on his conviction under 28 U.S.C. § 2255. According to Gensemer, his deadline to file was February 5, 2017. Mot. to Extend 2, ECF No. 1554. However, two institutional lock downs at FCC Pollock interrupted his preparation. The first lock down occurred in July of 2016. From July 23, 2016 until August 8, 2016, Gensemer was under "Institutional Lock-down for security precautions." Id. at 4. During that time, Gensemer was unable to leave his cell and lost access to the library, making it difficult to prepare his petition. About two weeks before Gensemer's deadline, the institution was again placed on lock down after inmates attacked a prison guard. That lock down began January 26, 2017 and was apparently still in effect on February 9, 2017. Mot. Leave to File, ECF No. 1559 Ex. A, B.

Gensemer requested a sixty-day extension to file his § 2255 petition on January 24, 2017. Mot. to Extend, ECF No. 1554. He argued that the lock downs were out of his control and that he

was unsure how long his access to prison legal resources would be interrupted. Id. at 2. The government opposed the extension. It argued that the Court lacked jurisdiction to extend the deadline until Gensemer actually filed a petition. Resp. to Mot. to Extend 1–2, ECF No. 1555. Rather than reply to the government, Gensemer requested leave to file his § 2255 petition and attached a handwritten motion to vacate or correct sentence to his motion. See Mot. for Leave to File, ECF No. 1559. Gensemer signed the proposed petition on February 5, 2017. He delivered it to prison staff to be mailed that same day. The Court received the petition and filed it on February 9, 2017. However, because Gensemer attached his § 2255 petition to his motion for leave to amend (ECF No. 1559), the petition was not docketed, and a corresponding civil case was not opened.

After filing his handwritten § 2255 petition, Gensemer moved to extend time to submit his supplemental brief that was presumably saved on the prison computer. ECF No. 1574. Gensemer finally submitted his supplement on August 14, 2017 as part of a Motion to Submit Attached Count/Ground One Supplement and Additional 2255 and Additional Counts/Grounds to the Already Filed 2255 Petition. ECF No. 1579. Although styled as a motion to supplement, the Court evaluated the motion as a motion to amend Gensemer's original § 2255 petition. In October of 2019, the Court granted in part and denied in part Gensemer's motion to amend. ECF No. 1587. The Court found that four of Gensemer's ten causes of action related back to his original § 2255 petition. The six remaining claims either did not relate back to the initial petition or did not meet the plausibility standard to proceed. The Court dismissed those claims and did not grant a certificate of appealability.

The surviving claims implicated the performance of Gensemer's trial counsel, Ozzie Fumo. As a result, the Court waived the attorney-client privilege between Gensemer and Fumo and ordered Fumo to submit an affidavit responding to Gensemer's allegations. The Court also ordered the government to respond to Gensemer's four remaining claims. The parties have each responded as ordered by the Court, and Gensemer's petition is fully briefed.

## II. Legal Standard

A defendant in federal custody may challenge a conviction that "was imposed in violation of the Constitution or laws of the United States" under 28 U.S.C. § 2255(a). However, § 2255 is not intended to give criminal defendants multiple opportunities to challenge their sentences. United States v. Dunham, 767 F.2d 1395, 1397 (9th Cir. 1985). Rather, § 2255 limits relief to cases where a "fundamental defect" in the defendant's proceedings resulted in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974). That limitation is based on the presumption that a defendant whose conviction has been upheld on direct appeal has been fairly and legitimately convicted. United States v. Frady, 456 U.S. 152, 164 (1982).

Because a § 2255 petitioner has already pursued—and lost—a direct appeal, the Court assumes that the conviction is valid. For that reason, the government need not respond to the petition until ordered to do so. United States v. Boniface, 601 F.2d 390, 392 (9th Cir. 1979). The Court may summarily dismiss the petition if it is clear from the record that the petitioner does not state a claim for relief or if the claims are frivolous or palpably incredible. United States v. Burrows, 872 F.2d 915, 917 (9th Cir. 1989) citing Baumann v. United States, 692 F.2d 565, 570–71 (9th Cir. 1982). As always, the Court construes pro se pleadings liberally and in the petitioner's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Despite that leeway, the pro se party is still "bound by the rules of procedure." Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995).

## III. Analysis

Gensemer's petition breaks down into two types of claims. The first is a double jeopardy claim under the Fifth Amendment. The others are ineffective assistance of counsel claims under the Sixth Amendment. The Court will evaluate the claims in that order.

### A. Fifth Amendment Claim

Gensemer first argues that his convictions under count one (RICO conspiracy) and count ten (drug conspiracy) violated the Fifth Amendment's double jeopardy prohibition because they were "for the same offense." Mot. to Vacate 3, ECF No. 1589. Gensemer did not make this argument on direct appeal and brings it for the first time in his § 2255 petition. A habeas petition

is not a second chance at a direct appeal. See Bousley v. United States, 523 U.S. 641, 622 (1998). Claims that could be raised on direct appeal but were not are procedurally defaulted at the habeas stage. Id. The presence of procedural default raises the already high bar for habeas relief. For such claims, the Court will not even reach their merits before the petitioner shows cause for his failure to make the challenge on direct appeal and actual prejudice. Id. Alternatively, the Court will consider a procedurally barred claim if the petitioner demonstrates actual innocence. Id. In the habeas context, actual innocence means factual innocence, not "mere legal insufficiency." Id. at 623; United States v. Avery, 719 F.3d 1080, 1083 (9th Cir. 2013).

Gensemer has not shown cause, prejudice, or actual innocence, and even if he did his Fifth Amendment claim would fail on the merits. Gensemer offers no explanation for why he failed to bring this argument on appeal. He has therefore not demonstrated cause to bring the claim now. Gensemer similarly does not claim factual innocence, nor could he. Instead, Gensemer claims he suffered prejudice as a result of the alleged double jeopardy violation. He argues that the RICO and drug conspiracy charges relied on "duplicated" information, which led to a larger overall sentence. D.'s Reply 3, ECF No. 1594. Gensemer is presumably referring to the 120-month difference between his 240-month sentence for the RICO conspiracy and the 360-month sentence that he received for the drug conspiracy. See Judgment 2, ECF No. 1211.

Gensemer has not suffered prejudice if he did not receive additional time as a result of these convictions. To show prejudice, Gensemer must demonstrate that his drug conspiracy conviction was the unconstitutional conviction because the two conspiracy sentences run concurrently. Thus, if the drug conspiracy conviction stands, Gensemer's sentence remains unchanged. However, there is no evidence that the drug conspiracy conviction was invalid. The jury found Gensemer guilty of the drug conspiracy beyond a reasonable doubt, which resulted in the 320-month sentence. Even if there was a double jeopardy issue, the concurrent sentence for RICO conspiracy would not add any time to Gensemer's incarceration. Because Gensemer is not serving a longer sentence, he has not shown prejudice. Therefore, his claim remains procedurally barred.

Gensemer's claim also fails on the merits. The Fifth Amendment prohibits a defendant

from receiving multiple punishments for the same offense. Whalen v. United States, 445 U.S. 684, 688 (1980). Double jeopardy attaches if the same act constitutes a violation of two different statutory provisions. Whether two charges are the "same" for double jeopardy purposes depends on whether "each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). If the government must prove different facts for each separate count, the defendant may be prosecuted for both. Id. Admittedly, there is often overlap between the charges in complex conspiracy cases. United States v. Solano, 605 F.2d 1141, 1144 (9th Cir. 1979). However, double jeopardy does not attach where the government must prove involvement in a RICO enterprise on the one hand and also the involvement in a drug conspiracy on the other. Indeed, racketeering "does not necessarily involve drug related activity," and the two statutes "involve[] elements which the other does not." Id. at 1145 (citing Untied States v. Smith, 574 F.2d 308, 310–11 (5th Cir. 1978)).

That is the case here. The government charged Gensemer in the indictment—and later proved at trial—that Gensemer engaged in illegal racketeering on behalf of the Aryan Warriors. Separately, the government proved that Gensemer engaged in a conspiracy to distribute methamphetamine. Each charge involved separate elements. To prove RICO conspiracy, the government had to show that (1) an enterprise existed: (2), that Gensemer knowingly agreed to participate in the enterprise; (3) that Gensemer was employed or associated with the enterprise; and (4) that the enterprise's activities affected interstate commerce. See Salinas v. United States, 522 U.S. 52, 62 (1997); Ninth Circuit Pattern Jury Instructions § 8.16 (2003 ed.). As for the drug conspiracy, the government had to demonstrate that (1) there was an agreement between Gensemer and at least one other person to distribute methamphetamine and (2) that Gensemer helped accomplish the purpose of the conspiracy. See United States v. Gil, 58 F.3d 1414, 1423 n.5 (9th Cir. 1995).

The elements of each conspiracy charge show that double jeopardy does not apply. The RICO conspiracy depended on the government proving that Gensemer agreed with others to engage in racketeering activity. The drug conspiracy required the government to show that Gensemer conspired with others to distribute methamphetamine, regardless of the Aryan

Warriors' involvement. Because RICO conspiracy and drug conspiracy involve elements that the other does not, double jeopardy does not bar a conviction on both charges. Accordingly, there was no Fifth Amendment violation here.

### B. Ineffective Assistance of Counsel Claims

Gensemer's remaining claims arise out of the Sixth Amendment's guarantee of effective assistance of counsel. The Sixth Amendment guarantees more than just the appointment of counsel; it guarantees effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685 (1984) ("[t]hat a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command . . . An accused is entitled to be assisted by an attorney . . . who plays the role necessary to ensure that the trial is fair"). Strickland outlines two avenues to prevail on a claim for ineffective assistance of counsel. Gensemer will prevail if he can show either: (1) that the government interfered with his right to counsel or (2) that his counsel failed to provide adequate legal assistance. Strickland, 466 U.S. at 686.

Gensemer does not claim that the government interfered with the appointment of his counsel. He claims that the attorney he did receive failed to provide an adequate defense. So, Gensemer is left with Strickland's two-prong test and must show deficient representation and prejudice. At bottom, Gensemer must show that his attorney committed errors "so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment" and that those errors prejudiced the outcome of his trial. See id. at 687. This is an objective analysis that examines the attorney's behavior compared to "prevailing professional norms." Id. at 688. The Court is "highly deferential" in its evaluation of trial counsel. Id. at 689. While hindsight may tempt the Court to critique counsel's performance after the fact, the Court must presume that counsel's performance was solid trial strategy. Id.

Gensemer challenges three separate actions or inactions of trial counsel. First, Gensemer claims that his trial counsel, Ozzie Fumo, did not disclose plea offers and did not tell Gensemer that he could plead guilty without a plea offer. Mot. to Vacate at 29. Second, Gensemer argues that trial counsel was ineffective because he failed to subpoena Jessica Gonzalez to testify at trial

even though she would testify that Gensemer did not own or possess the guns police found in his home. The presence of those guns in Gensemer's home led to his conviction under 18 U.S.C. § 924(C) and added five years to his overall sentence. Last, Gensemer argues that trial counsel did not adequately challenge the charge for possession of a firearm during a drug trafficking offense. The Court will take each claim in order.

### 1. Counsel's Plea Advice

Gensemer argues that Ozzie Fumo did not make him aware of global plea offers, nor did he inform Gensemer that he could plead guilty without the benefit of a plea agreement. Apparently, had Gensemer known he could enter a guilty plea, he would have done so and avoided trial. That claim is belied by the record, common sense, and Ozzie Fumo's sworn declaration. The record, especially the presentence investigation report, contradicts Gensemer's claim. Gensemer had a lengthy criminal history, having been convicted in both federal and state court several times. Some of those convictions relied upon a guilty plea and an accompanying plea agreement. For others there is no evidence that Gensemer received a plea offer before entering his guilty plea. See Govt. Resp. 14, ECF No. 1593 (citing PSR ¶¶ 160–163). It would strain common sense to believe that Gensemer was unaware that he could plead guilty without the benefit of a plea agreement.

Gensemer's claim is further contradicted by the recollections of his trial counsel. Following the Court's October order, Ozzie Fumo provided an affidavit responding to Gensemer's ineffective assistance of counsel claims. Understandably, Fumo could not recall the specifics in every instance as this case is more than a decade old. However, Fumo testified that he "recall[s] going over a Guilty Plea Agreement with Mr. Gensemer several months before trial" and that it "is [his] practice to inform [his] clients of the ability to plead without a plea agreement." Fumo Decl. 2–3, ECF No. 1593-1. The Court has seen first-hand Fumo's dedication to informing his clients of all their options at the plea-negotiation stage. See Shah v. United States, 878 F.2d 1156, 1160 (9th Cir. 1989) (it would defy common sense to accept that Gensemer received this advice particularly "in light of the district court's own knowledge of defense counsel's competence and experience").

1    Yet, Gensemer claims Fumo kept him in the dark. Fumo testified that Gensemer disclosed to him the real reason he rejected the government's plea offers. Gensemer believed that anyone who pleaded guilty was "an enemy." Id. at 3. There is no evidence here that Gensemer's trial counsel failed to disclose a potential plea agreement, nor is there evidence that Gensemer was unaware that he could plead guilty without a plea agreement. To the contrary, the record, common sense, and trial counsel's declaration make clear that Gensemer's claim is baseless.

### 2. Counsel's Failure to Call Jessica Gonzalez as a Witness

Next, Gensemer argues that trial counsel failed to call Jessica Gonzalez as a witness even though she was eager to testify, and her testimony would have been exculpatory. The actions of trial counsel receive a strong presumption of reasonableness. Harrington v. Richter, 562 U.S. 86, 104 (2011). This is especially the case where counsel's alleged ineffectiveness resulted from tactical or strategic decisions. Edwards v. Lamarque, 475 F.3d 1121, 1127 (9th Cir. 2007). After all, a reasonable tactical decision "is immune from attack" if counsel first makes an adequate inquiry into the consequences of that decision. See Gerlaugh v. Stewart, 129 F.3d 1027, 1033 (9th Cir. 1997). Thus, so long as counsel's "reasonable investigation[]" justifies the tactical decision, that decision is unassailable under Strickland. Correll v. Ryan, 539 F.3d 938, 948 (9th Cir. 2008).

Fumo's declaration states that he was aware early on that Gonzalez was an important witness for Gensemer. Fumo Decl. at 2. Fumo met with Gonzalez to discuss her testimony and impress upon her the importance of her testimony to Gensemer. This is reflected in Fumo's opening statement where he told the jury that they would hear testimony from Gonzalez. Id. When the time came for Gonzalez to testify, however, she refused. She felt that if she testified for Gensemer that the government would indict her, and she did not want to take that risk. Id. In light of Gonzalez's decision not to testify, Fumo chose not to compel her testimony. He worried that had Gonzalez taken the stand to "plead the 5th . . . or was in any way a reluctant witness it would hurt Mr. Gensemer." Id.

Nevertheless, Gensemer argues that Gonzalez was willing and able to testify. See Gonzalez Decl., ECF No. 1594-A. Even Gensemer admits, however, that the decision not to call

Gonzalez was tactical. In his response, Gensemer classifies Fumo's decision not to call Gonzalez as "a colossal *tactical* blunder." D.'s Reply at 5 (emphasis added). He may be right. But even a "colossal tactical blunder" does not necessarily constitute ineffective assistance of counsel under Strickland. The key is whether Fumo undertook reasonable investigation to assess the risks in not compelling Gonzalez to testify. Fumo's declaration makes clear that he did. Fumo recognized early on that Gonzalez was an "essential witness" and met with her to discuss her testimony. He kept in contact with her throughout the pretrial preparation and up to trial, when she informed him that she would not testify. Fumo then had two options, he could compel Gonzalez's testimony and risk a noncooperative witness or he could refuse to call her at all. Fumo chose not to call her. Whether that decision ultimately helped or hindered Gensemer is not the point. Fumo evaluated the information he had and determined Gonzalez's testimony was not worth the risk. That does not rise to the level of ineffective assistance of counsel.

### 3. *Counsel's Failure to Challenge the Gun Charge*

Finally, Gensemer argues that he received ineffective assistance of counsel when Fumo failed to effectively challenge the "gun charge." To be clear, the "gun charge" refers to Gensemer's possession of a firearm in relation to a drug trafficking offense under 18 U.S.C. § 924(C)(1). Gensemer claimed at trial, and still claims, that he did not own or possess the handguns that police found in his home. The jury disagreed and the resulting § 924(C) conviction added five years to Gensemer's overall sentence. The gist of this claim is that had Fumo been an effective advocate, no reasonable jury could have convicted him. Because no reasonable jury could have convicted, Fumo must not have effectively challenged the § 924(C) charge.

Gensemer's circular reasoning is unsupported in the record as Fumo indeed challenged Gensemer's possession of the firearms. Fumo started in his opening statement. There, he told the jury that Bryan Crawley, not Gensemer, was the owner of the weapons. Transcript 33, ECF No. 128. Fumo reinforced this on cross examination. Transcript 146, ECF No. 1316. There, he asked Detective Bachman whether officers analyzed the firearms in Gensemer's home for fingerprints. Id. The detective responded that they had. Fumo then asked if any of Gensemer's fingerprints were found on the weapons. Id. Detective Bachman answered that Gensemer's fingerprints were

not found on the gun. Id. Fumo tied all of this together in his closing argument, stating that there were "no fingerprints of [Gensemer] on the gun inside the house. No fingerprints of [Gensemer] on the guns inside the storage unit. No fingerprints of [Gensemer] on the lock on the storage unit. No fingerprints of [Gensemer] on the shed . . . We all know they can take fingerprints. Don't tell me that they didn't get any. They got fingerprints. Charles Gensemer's fingerprints weren't on there." Transcript 81, ECF No. 1264. The jury clearly rejected the argument. The mere fact that the jury ultimately decided that Gensemer possessed the firearms found in his home does not mean that counsel was ineffective. To the contrary, Fumo mounted a strong defense to the gun charge. Therefore, Gensemer has not shown that he received constitutionally inadequate assistance of counsel.

### C. Certificate of Appealability

Having found each of Gensemer's claims deficient, the Court now turns to whether he has made the necessary showing to warrant a certificate of appealability. He has not. A certificate of appealability enables a § 2255 petitioner to pursue appellate review of a final order. It is only available where the petitioner has "made a substantial showing" of a constitutional deprivation in his § 2255 petition. 28 U.S.C. § 2253(c)(2); Welch v. United States, 136 S.Ct. 1257, 1263 (2016). A petitioner has made a substantial showing of a constitutional violation if reasonable judges could disagree whether he has suffered such a deprivation. Slack v. McDaniel, 529 U.S. 473, 484 (2000). That is not the case here.

Gensemer's Fifth Amendment double jeopardy claim is both procedurally defaulted and factually deficient. Gensemer failed to bring that challenge on direct appeal, which raised the bar for relief here. He failed to demonstrate cause for that failure or prejudice, and he did not plead actual innocence. Thus, the claim remains procedurally defaulted. Alternatively, there is no double jeopardy violation based on Gensemer's conviction for RICO conspiracy and drug conspiracy. The two charges required the government to prove unique elements, making the crimes too different to merge under Blockburger. Similarly, each of Gensemer's Sixth Amendment claims were deficient as counsel's alleged shortcomings were either the result of sound trial strategy or were explicitly contradicted by the record. As a result, reasonable jurists

would not find a constitutional deprivation in Gensemer's claims. Thus, a certificate of appealability is denied.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Charles Edward Gensemer's Motion for Appointment of Counsel (ECF No. 1592) is **DENIED**.

IT IS FURTHER ORDERED that Gensemer's Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 1589) is **DENIED**.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

The Clerk of the Court is directed to enter a separate judgment in favor of the United States of America and against Gensemer.

Dated this 27th day of March, 2020.

_____
Kent J. Dawson
United States District Judge